UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

| | |
|---|---|
| CAN'T LIVE WITHOUT IT, LLC D/B/A S'WELL BOTTLE, | : Case No. _____ |
| | : **COMPLAINT** |
| Plaintiff, | : **JURY TRIAL DEMANDED** |
| -against- | : |
| ETS EXPRESS, INC., | : |
| | : |
| Defendant. | : |

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

Plaintiff Can't Live Without It, LLC d/b/a S'well Bottle ("S'well"), by its attorneys, for its complaint against Defendant ETS Express, Inc. ("ETS"), hereby alleges as follows:

## INTRODUCTION

1.      S'well is the nation's premier supplier of reusable insulated water bottles.  Among other products, S'well distributes the highly popular, high-quality, stylish, insulated, stainless steel reusable bottle (the "S'well Bottle") featuring S'well's distinctive registered trade dress. The S'well Bottle is shown in the following representational images:



1

2.      S'well also distributes the highly popular, high-quality, stylish, insulated, stainless steel reusable S'ip by S'well bottle (the "S'ip Bottle") featuring S'well's distinctive S'ip Bottle trade dress.  The S'ip Bottle is shown in the following representational images:



3.      ETS is engaged in a practice of knowingly, intentionally and willfully infringing the world-renown S'well Bottle trade dress, the S'ip Bottle  trade dress and the S'WELL brand, competing unfairly with S'well, engaging in deceptive trade practices, and confusing and deceiving consumers.  ETS intentionally copied the S'well Bottle and S'ip Bottle trade dresses to attract attention to itself and its low quality goods, and to confuse the public into believing that ETS's own bottles ("ETS's Infringing Products") are somehow associated or affiliated with, sponsored by, or otherwise connected with S'well, the S'well Bottle, the S'ip Bottle and the S'well brand.  Upon information and belief, ETS has misled consumers and potential consumers by telling them that ETS's own bottles are S'well Bottles.

4.      ETS is attempting to reap for itself the goodwill and reputation painstakingly built by S'well.  ETS's selling, offering to sell, marketing, advertising, importing, and distributing around the United States its own bottles bearing the distinctive S'well Bottle and S'ip Bottle

trade dresses (or trade dresses intentionally confusingly similar thereto) has deceived consumers and caused actual confusion in the marketplace, and ETS has caused, and unless enjoined, will continue to cause, irreparable harm and an incalculable loss to S'well.

5.       Accordingly, S'well brings this action for trade dress infringement, and false designation of origin and unfair competition under the Lanham Act, 15 U.S.C. § 1051, *et seq.*, and for trade dress infringement and violations of the deceptive acts and practices statute under state law, and unfair competition under the common law.

## PARTIES

6.       S'well is organized and exists under the laws of the State of Delaware, with its principal place of business in New York, New York.

7.       ETS is organized and exists under the laws of the State of California, with its principal place of business at 420 South Lombard St., Oxnard, California 93030.  ETS also runs a facility at 7055 Northwinds Dr. NW, Concord, North Carolina 28027.

## JURISDICTION AND VENUE

8.       This Court has jurisdiction under 15 U.S.C. § 1121(a) and 28 U.S.C. §§ 1331, 1338(a), and 1338(b).  The state law claims under New York Law form a part of the same case and controversy, making the exercise of supplemental jurisdiction under 28 U.S.C. § 1367 appropriate.

9.       Personal jurisdiction is proper over ETS pursuant to C.P.L.R. § 302(a) because ETS has transacted and done business in New York, has solicited consumers in this District, has marketed ETS's Infringing Products in this District, has offered to sell or has sold ETS's Infringing Products to consumers in this District, and maintains a website that is highly

interactive, accessible in New York, and offers New York residents the opportunity to purchase ETS's Infringing Products.

10.     Specifically, ETS markets infringing products on its website at http://www.etsexpress.com/pg_home and permits customer orders of ETS's Infringing Products through its customer portal on its website at http://portal.etsexpress.com/# (together its "Website").  ETS markets, sells, and distributes ETS's Infringing Products in the State of New York, including through its Website and at trade shows, including the "2015 ASI Show New York" at the Jacob K. Javitz Convention Center in this District.

11.     Personal jurisdiction is also proper pursuant to C.P.L.R. § 302(a) because ETS has committed torts outside New York that have caused damage in New York, where S'well maintains its principal place of business.

12.     Venue is proper in this District under 28 U.S.C. § 1391(b)(2) because a substantial part of the events giving rise to these claims arose in this District.

<u>**FACTS COMMON TO ALL CLAIMS**</u>

**S'well, the S'well Bottle and S'ip Bottle Trade Dresses, and the S'well Marks.**

13.     In 2010, S'well was launched with a mission to rid the world of plastic bottles and to become a responsible steward of the environment and of causes that are important to S'well. When developing the S'well Bottle, S'well took care to bring to the market a beautifully crafted, reusable bottle that would limit the amount plastic waste dumped into landfills each year.

14.     S'well maintains strict quality control and safety standards for all of S'well's products, including standards intending to reduce any harmful byproducts as a result of the manufacturing of the S'well Bottle and S'ip Bottle.  S'well Bottles and S'ip Bottles, for example, are composed of a non-leaching and BPA-free 18/8 stainless steel.  S'well exerts significant

efforts to ensure that its  manufacturers and suppliers adhere to the stringent quality control and safety standards set by S'well.

15.     Customers, potential customers, and other members of the public and industry associate the S'well Bottle and S'ip Bottle with exceptional materials, style, and workmanship. Many consumers purchase S'well Bottles and S'ip Bottles because of S'well's reputation for quality, as well as its partnering with numerous charitable organizations to give back to the community and its commitment to health, wellness, conservation, and the environment.  S'well's bottles are among the most popular drinking containers offered for sale in the United States.

16.     S'well Bottles bearing the S'well Bottle trade dress come in a variety of sizes, colors, and textures and are sold at well-known retailers and department stores across the United States, such as Starbucks, JCrew, Nordstrom, Neiman Marcus, Bloomingdales, Saks, Crate + Barrel, ABC Carpet and Home, Williams Sonoma, and Equinox Health Centers, as well as thousands of other retailers in the United States and abroad.

17.     S'well's marketing efforts have resulted in widespread and favorable public acceptance and recognition of the S'well Bottle trade dress and S'WELL trademarks.  As a result, the S'well Bottle trade dress and the S'WELL marks have become highly valuable and recognizable to the public.  The S'well Bottle trade dress has gained secondary meaning as the designation of origin for S'Well Bottles.

18.     Since 2010, for example, S'well has undertaken extensive marketing and promotion relating to the S'well Bottle.  In addition, the S'well Bottle has been featured in all of the major consumer product trade shows, and has been featured in at least 35 domestic trade shows in just the last year.  S'well further employs a social media and marketing team to

promote the S'well Bottle trade dress and S'well brand on sites such as Facebook, Twitter,
Instagram, and Snapchat.

19.     Over the past several years, the S'well Bottle has been extensively advertised and
has received considerable media coverage.  For example, images of the S'well Bottle bearing the
S'well Bottle trade dress have appeared in magazines such as *InStyle*, *People*, *Vogue*, *Teen
Vogue*, *Glamour*, *Elle Canada*, *Cosmopolitan*, *Seventeen*, *US Weekly*, *Time*, *Marie Claire*,
*Pregnancy Magazine*, *Business Insider*, *O Magazine*, *Travel + Leisure*, *Shape*, *Women's Health*,
*Fitness*, *Better Homes and Gardens*, *Time Out New York*, and *Architectural Digest*, and
newspapers such as *The New York Times*, *The Washington Post*, *The Miami Herald*, *The Boston
Globe*, *NY Daily News*, *Chicago Tribune*, *The Huffington Post*, *Houston Chronicle*, *Metro*,
*Financial Times* and *Star Tribune*.

20.     S'well Bottles have also been featured prominently in segments on several news
shows, such as *The Today Show* and *CBS News*.  In addition, S'well is the official bottle partner
for the prestigious TED conference, Mercedes Benz Fashion Week, the Coterie, ENK, and
PROJECT fashion shows, as well as Harvard Business School.

21.     S'well also has created S'well Bottles for some of the most recognizable brands in
America, including but not limited to Apple, H&M, Boeing, Audi, BMW, Delta, Evernote,
Facebook, Google, Harvard, National Basketball Association, Starbucks, The Nature
Conservancy, Trader Joe's, Universal Music Group, Fidelity, Jimmy Kimmel Live!, Uber,
Microsoft, and UNICEF.  A few examples of the S'well Bottle featuring the S'well Bottle trade
dress created for recognizable brands is shown in the following representational images:



22.     S'well additionally has engaged in unique collaborations allowing for the promotion and sale of S'well Bottles.  For example, S'well has partnered with certain ready-to-wear and contemporary fashion trade shows, including ENK Coterie, Project Women, Project NYC, and Cabana Miami.  And in 2015, S'well had a prominent profile at the South by Southwest festival in Austin, Texas, allowing for placement of S'well Bottles with distinguished influencers, organizations, and attendees, including Spotify, Funny or Die, SXSW Social Good Hub, and executives from Huff Post Live, American Express, Reddit, and Bloomberg.

23.     In March 2016, S'well launched the S'ip Bottle nationwide and since that time has undertaken extensive marketing and promotion relating to the S'ip Bottle.  In addition, the S'ip Bottle has been extensively promoted and advertised by S'well's authorized retailers.  S'well further utilized its social media and marketing team to promote the S'ip Bottle trade dress on sites such as Facebook, Twitter, Instagram, and Snapchat.

24.     The S'ip Bottle has received considerable and widespread media coverage.  For example, images of the S'ip Bottle bearing the S'ip Bottle trade dress have appeared in magazines such as *People*, *OK!*, *American Way*, *Essence*, and *Redbook*, and have been featured on popular websites such as *Yahoo Finance*, *Buzzfeed*, *Best Products*, *Daily Mail*, *Modern Mom*, *Pop Sugar*, and *Business Insider*.

25.     In just about a year following its release, more than $25,000,000 of sales of S'ip Bottles featuring the S'ip Bottle trade dress were made.

26.     S'well's reputation is a direct result of its extensive advertising and promotion, and concomitant widespread sales, the care and skill utilized in the manufacture of S'well's products, and the uniform high quality of such products.  S'well has created invaluable goodwill throughout the United States and elsewhere by selling products of dependable quality.

27.     S'well is the owner of all right, title, and interest in and to, *inter alia*, the following trade dress and  trademarks, all of which are registered on the United States Patent and Trademark Office's ("USPTO") Principal Register:

| Registration No. | Registered Mark | Date of Registration |
|---|---|---|
| **5,118,514 (the "S'well Bottle")** | | Jan. 10, 2017 |
| **4,234,092** | **S'well** | Oct. 30, 2012 |
| **4,559,184** | S'well | Jul. 01, 2014 |
| **4,559,187** | Swell | Oct. 08, 2013 |

28.     S'well also is the owner of all right, title, and interest in and to Registration No. 4,366,242, issued on July 9, 2013, on the USPTO's Supplemental Register for the S'well Bottle trade dress.  Attached as Exhibit A hereto are true and correct copies of U.S. Trademark Registration Certificate Nos. 5,118,514 and 4,366,242.

29.    S'well and/or its predecessors in interest have been using the S'well Bottle trade dress continuously in interstate commerce since as early as 2009.  S'well been using the S'ip Bottle trade dress continuously in interstate commerce since March 2016.

30.    As reflected in the Registrations issued by the USPTO to S'well, the S'well Bottle trade dress consists of a distinctive "three-dimensional configuration of a bottle and bottle cap" as shown below:



31.    The S'ip Bottle trade dress consists of a distinctive "three-dimensional configuration of a bottle and bottle cap" as shown below:



32.     The designs of the S'well Bottle and S'ip Bottle trade dresses are non-functional, as is demonstrated by the fact that there is no need for a bottle to be shaped this way in order to function as a reusable water bottle (*i.e.,* to hold liquid), as is clear from the multitude of other shapes of reusable insulated water bottles available in the market.  There is virtually no limit on the number of shapes and configurations for bottles capable of holding water.  Just a few examples of differently shaped reusable water bottles available in the market are shown below:







**ETS's Unlawful Conduct.**

33.    In or around August 2014, after S'well had expended substantial effort and resources marketing the S'well Bottle and promoting the S'well Bottle trade dress, after the S'well Bottle had received widespread national media coverage and publicity, after many millions of dollars in sales of S'well Bottles bearing the S'well Bottle trade dress had been sold, and after the S'well Bottle trade dress was recognized and associated by the consuming public with S'well, ETS copied the S'well Bottle trade dress and began marketing and selling ETS's Infringing Products across the United States.

34.    In a pleading ETS filed in federal court in 2014, ETS made a judicial admission that ETS's Infringing Product, which was launched in 2014, "clearly resembles" the trade dress of S'well's predecessor-in-interest, which trade dress was launched in 2009.

35.    Since 2014, ETS has been offering, selling and actively promoting ETS's Infringing Products in a manner that is likely to confuse, and which has created actual confusion among, the public as to an association between ETS and its products, on the one hand, and S'well and its products, on the other.

36.     ETS adopted a configuration for ETS's Infringing Products that  is

indistinguishable from S'well's registered trade dress:



| S'well's Registered Design | ETS's Infringing Product |
|---|---|

37.     The configuration of ETS' Infringing Products appears identical to the

configuration of the S'well Bottle, thus creating a likelihood of confusion as to the origin of

Infringing Products:



| Examples S'well Bottle | Examples ETS's Infringing Product |
|---|---|



38.     In addition to producing ETS's Infringing Products that appear identical to the S'well Bottle, ETS further associates ETS's Infringing Products with S'well by prominently depicting the S'well Bottle design on ETS's packaging and shipping cartons:



39.     ETS offers and distributes ETS's Infringing Products through the same channels of commerce through which the S'well Bottle is distributed.

40.     ETS's intentional deception has succeeded, as customers and distributors alike have been fooled into perceiving an association between S'well and ETS's Infringing Products. For example, retailers have mistakenly promoted ETS's Infringing Products (shown below in black) as S'well Bottles (shown below in red) and under the S'WELL trademark:



And, retailers have designated ETS's Infringing Products as S'well Bottles:



41.     Moreover, because ETS offers imprinting on ETS's Infringing Products, in addition to injecting its products directly into the stream of commerce, ETS is targeting for exploitation S'well's highly successful Large Order program, which caters, in part, to corporate clients wishing to partner with S'well to create branded S'well Bottles.  An example of ETS's Infringing Products targeted at S'well's Large Order program is shown below:



42.     ETS has caused further harm to S'well because, in addition to ETS's Infringing Products made from stainless steel, ETS has made unauthorized use of  the S'well Bottle trade

16

dress in connection with bottles constructed with copolyester, a type of plastic.  S'well has

steadfastly worked in furtherance of its mission to rid the world of plastic bottles, and thereby

enjoys a well-earned reputation as a responsible steward of the environment, which reputation is

tarnished by the association of ETS's plastic bottles with the S'well Bottle trade dress and S'well

brand.  Examples of ETS's Infringing Products made from plastic are shown below:



43.    Recently, after the resounding success of the S'ip Bottle, after S'well had

expended substantial effort and resources in research, development and design of the S'ip Bottle

and S'ip Bottle trade dress, after S'well expended substantial effort and resources in marketing

the S'ip Bottle and promoting the S'ip Bottle trade dress, after the S'ip Bottle had received

widespread media coverage and publicity, after many millions of dollars in sales of S'ip Bottles

bearing the S'ip Bottle trade dress had been sold, and after the S'ip Bottle trade dress was

recognized and associated by the consuming public with S'well, ETS again targeted S'well and

copied the S'ip Bottle trade dress.  ETS has now begun marketing and selling infringing products

bearing identical or confusingly similar trade dress as the S'ip Bottle trade dress.

44.    The configuration of ETS's knock-off bearing the S'ip Bottle trade dress appears

identical to the configuration of the S'ip Bottle, thus creating a likelihood of confusion as to the

origin of ETS's infringing S'ip Bottle knock-offs:

| Examples S'ip Bottle | Examples ETS's Infringing Knock-Off |
|---|---|



45.     Prior to the date of this lawsuit, S'well placed ETS on notice that ETS's Infringing Products infringed upon the S'well Bottle trade dress.  S'well has written to ETS demanding that it cease and desist from its unlawful conduct.  ETS, however, has not halted its unauthorized use of the S'well Bottle trade dress and continues to knowingly, blatantly and willfully engage in its unlawful practices.

46.     At no time did S'well grant ETS any right, assignment, authorization, license, or other permission to produce, market, or sell products bearing the S'well Bottle or S'ip Bottle trade dresses or any configuration confusingly similar thereto.  To the contrary, S'well has expressly objected  to ETS's use of its confusingly similar trade dress.

47.     Nevertheless, ETS is continuing in its efforts to free ride on the fame and reputation of S'well and the S'well Bottle and S'ip Bottle by continuing to market, promote, distribute and sell products bearing the S'well Bottle and S'ip Bottle trade dresses or configurations confusingly similar thereto, and by using the S'WELL name and trademark in connection with those activities.

48.     S'well has been, and continues to be, harmed by the false association with ETS arising from ETS having associating itself with the S'well Bottle trade dress, the S'ip Bottle trade dress, and the S'WELL brand.  ETS has endeavored to create in the public mind, and has succeeded in creating to S'well's continuing harm, a mistaken belief that there is an affiliation, association, sponsorship, or other connection between itself and its products and S'well.

49.     ETS's conduct relating to its infringement of S'well's trade dresses and its other unlawful acts has caused and continues to cause irreparable injury to S'well's trade, business reputation, and good will.  Upon information and belief, ETS intends, unless enjoined by this Court, to continue its course of conduct and to wrongfully use, infringe upon, and otherwise profit from the S'well Bottle and S'ip Bottle trade dresses and the S'WELL brand, to compete unfairly, and to confuse and deceive consumers.

50.     As a direct and proximate result of the acts of ETS, S'well already has suffered harm, including irreparable harm and has sustained losses of good will.  S'well has no adequate remedy at law to redress all of the injuries that ETS has caused, and intends to cause, by its conduct.  S'well will continue to suffer irreparable damage and sustain losses until ETS's actions as described above are enjoined by this Court

**FIRST CAUSE OF ACTION**
(Trade Dress Infringement, 15 U.S.C. § 1114)

51.     S'well realleges and incorporates by reference the allegations in Paragraphs 1 through 50 above.

52.     S'well utilizes the S'well Bottle trade dress in interstate commerce and it and its predecessor-in-interest have done so exclusively and continuously since long prior to ETS.

53.     S'well is the owner of the S'well Bottle trade dress which has been registered by the USPTO on the Principal Register.  The S'well Bottle is distinctive and non-functional and has acquired secondary meaning.

54.     ETS has, without consent from S'well, used the registered trade dress and/or confusingly similar trade dress in connection with ETS's own goods and services and its marketing and promotion thereof, in manners which have caused actual confusion and which are likely to continue to cause confusion and mistake and to deceive consumers as to the source or origin of ETS's goods and services.

55.     ETS's acts constitute use in commerce of a reproduction, counterfeit, copy or colorable imitation of registered trade dress, in connection with the sale, offering for sale, distribution or advertising of services, on or in connection with such use, which is likely to cause confusion or to cause mistake or to deceive, in violation of 15 U.S.C. § 1114(1).

56.     By its actions alleged above, ETS has infringed and will continue to infringe S'well's trade dress in violation of Section 32 of the Lanham Act.

57.     The actions of ETS have been committed in bad faith, willfully and with intent, making this an exceptional case and entitling S'well to recover its costs of the action and reasonable attorney's fees pursuant to 15 U.S.C. § 1117(a), and the damages sustained by S'well as a result of the unlawful conduct alleged herein should be trebled in accordance with 15 U.S.C. § 1117(b).

58.     As a direct and proximate result of its wrongful conduct, ETS has realized profits and other benefits to which ETS is not entitled.

59.     As a direct and proximate result of ETS's wrongful conduct, ETS has caused and is causing substantial and irreparable harm to S'well, its registered trade dress and to the business and goodwill represented by its registered trade dress, in an amount not readily capable of determination.  Unless restrained by this Court, ETS will cause further irreparable harm to S'well.

60.     By reason of the foregoing, S'well is entitled to injunctive relief against ETS, and, after trial, to recover any damages proven to have been caused by reason of ETS's willful acts of trade dress infringement.

### SECOND CAUSE OF ACTION
(False Designation of Origin and Unfair Competition, 15 U.S.C. § 1125(a))

61.     S'well realleges and incorporates by reference the allegations in Paragraphs 1 through 60 above.

62.     S'well utilizes the S'well Bottle trade dress and S'ip Bottle trade dress in interstate commerce and it and its predecessor-in-interest have done so exclusively and continuously since long prior to ETS.

63.     S'well utilizes the S'WELL mark in interstate commerce and it has done so exclusively and continuously since 2010.

64.     ETS has, without consent from S'well, produced, sold, marketed, imported, and distributed, and is still producing, selling, marketing, importing, and distributing in commerce infringing products bearing S'well's trade dresses or trade dresses confusingly similar thereto. without S'well's authorization or consent and having knowledge of S'well's well-known and prior rights in the S'well Bottle and S'ip Bottle trade dresses.

65.     ETS has, without consent from S'well, utilized the S'WELL mark in connection with its marketing, selling and promoting of ETS's own goods and services.

66.     ETS' actions have caused and are likely to cause confusion and mistake, and have deceived and are likely to deceive potential customers and the general purchasing public as to the source of the Infringing Products by leaving customers with the mistaken belief that ETS's infringing products originate from or are otherwise associated with S'well.

67.     ETS's acts as alleged herein constitute, among other things, false designations of origin, false or misleading descriptions of fact, or false or misleading representation of fact which are likely to cause confusion or mistake, or to deceive the public as to the origin, sponsorship, or approval of the goods and services of ETS, and otherwise constitute infringement and unfair competition in violation of 15 U.S.C. § 1125(a).

68.     The acts of ETS have been committed in bad faith, willfully and with intent, making this an exceptional case and entitling S'well to recover its costs of the action and reasonable attorneys' fees pursuant to 15 U.S.C. § 1117(a), and the damages sustained by S'well as a result of the unlawful conduct alleged herein should be trebled in accordance with 15 U.S.C. § 1117(b).

69.     As a direct and proximate result of its wrongful conduct, ETS has realized profits and other benefits to which it is not entitled.

70.     As a direct and proximate result of ETS's wrongful conduct, ETS has caused and is causing substantial and irreparable harm to S'well, its trade dress and marks and to the business and goodwill represented by its trade dress and marks, in an amount not readily capable of determination.  Unless restrained by this Court, ETS will cause further irreparable harm to S'well.

71.     By reason of the foregoing, S'well is entitled to injunctive relief against ETS, and, after trial, to recover any damages proven to have been caused by reason of ETS's acts of trademark infringement, false designation of origin and unfair competition.

### THIRD CAUSE OF ACTION
(Trade Dress Infringement Under New York Law)

72.     S'well realleges and incorporates by reference the allegations in Paragraphs 1 through 71 above.

73.     ETS' acts as described above constitute trade dress infringement under New York law.

### FOURTH CAUSE OF ACTION
(Unfair Competition Under Common Law)

74.     S'well realleges and incorporates by reference the allegations in Paragraphs 1 through 73 above.

75.     ETS's acts and omissions as described herein constitute unfair competition against S'well.

76.     ETS's unfair competition has harmed and is continuing to harm S'well,  its business and its goodwill.

77.     In addition to monetary harm, S'well has suffered and is continuing to suffer irreparable harm as a result of ETS's unfair competition, and S'well has no adequate remedy at law for such injuries.

### FIFTH CAUSE OF ACTION
(Deceptive Acts and Practices, N.Y. Gen. Bus. Law § 349)

78.     S'well realleges and incorporates by reference the allegations in Paragraphs 1 through 77 above.

79.     By producing, selling, marketing, importing, and distributing in commerce infringing products bearing S'well's trade dresses or trade dresses confusingly similar thereto, without S'well's authorization, and utilizing S'well's marks in connection with the sale, marketing and promotion of ETS's own goods and services, ETS has engaged in an act or practice that is deceptive and misleading in a material way.

80.     ETS has set out to intentionally mislead consumers and the general public, specifically including consumers and the public at large in New York.

81.     ETS' actions have caused damage to S'well's consumers by deceiving consumers into buying infringing products that are inferior to the S'well Bottle and S'ip Bottle and that are not produced, sold, marketed, imported, and distributed in accordance with S'well's commitment to the environment.

82.     ETS's actions have also caused damage to S'well through, *inter alia*, lost profits, harm to the substantial business and goodwill symbolized by the S'well Bottle and S'ip Bottle trade dresses and the S'WELL mark, and the association of S'well with a product that is produced, sold, marketed, imported, and distributed under quality controls that are inferior to those of S'well and that do not reflect S'well's commitment to the environment.

83.     ETS has acted in bad faith and is willfully infringing and intentionally selling infringing products in an effort to reap the benefits of the goodwill associated with the S'well Bottle and S'ip Bottle trade dresses and S'WELL mark.  Accordingly, the damages sustained by S'well as a result of the unlawful conduct alleged herein should be trebled in accordance with N.Y. Gen. Bus. Law § 349(h).

<u>**SIXTH CAUSE OF ACTION**</u>
(False Advertising, N.Y. Gen. Bus. Law § 350)

84.     S'well realleges and incorporates by reference the allegations in Paragraphs 1 through 83 above.

85.     By marketing through its Website, at trade shows, and through other media, ETS's infringing products, and by making statements associating ETS's infringing products with the S'well brand when selling ETS's infringing products, ETS has engaged in advertising that is deceptive and misleading in a material way.

86.     ETS's actions were aimed at the consumer public at large through ETS's extensive marketing of ETS's infringing products.

87.     ETS's marketing has caused and is likely to cause confusion and mistake, and has deceived and is likely to deceive potential customers and the general purchasing public by leaving customers with the mistaken belief that ETS's infringing products are associated with S'well.

88.     ETS's actions have also caused damage to S'well through, *inter alia*, lost profits, harm to the substantial business and goodwill symbolized by the S'well Bottle and S'ip Bottle trade dresses, and the association of S'well with a product that is produced, sold, marketed, imported, and distributed under quality controls that our inferior to those of S'well and that do not reflect S'well's commitment to the environment.

## PRAYER FOR RELIEF

**WHEREFORE**, S'well prays for a judgment in its favor and against ETS for the following relief:

1.     ETS, its officers, agents, employees, and any other individuals or entities acting in concert with ETS, be temporarily, preliminarily, and permanently enjoined from:

a.  making any use of the S'well Bottle or S'ip Bottle trade dresses or trade dress confusingly similar thereto, whether alone or in combination with any other words, designs, or disclaimers, in any manner likely to cause consumer confusion, deception, or mistake on or in connection with any producing, selling, marketing, importing, or distributing of bottles.

b.  using any other false designation of origin or false description or representation or any other thing calculated to or likely to cause confusion or mistake in the mind of the trade or public or to deceive the trade or public into believing that ETS's products or services are in any way, sponsored, licensed, authorized, or affiliated with S'well;

c.  secreting, destroying, altering, removing, or otherwise dealing with the infringing products or any books or records relating to the infringing products;

d.  importing any products that infringe upon the S'well Bottle trade dress; and

e.  from any other act or practice that competes unfairly with S'well.

2.  ETS be ordered to deliver to S'well for recycling any and all of ETS's infringing products in its possession or under its control (including any and all catalogs or other printed material that promotes or otherwise displays the infringing products) that were or are being used, produced, sold, marketed, imported, or distributed whether in the United States, including recalling and removing from its Websites, online markets, or other channels of commerce any of ETS's infringing products or display of the same.

3.  ETS be ordered to supply S'well with a complete list of entities from whom it obtained and to whom it distributed and/or sold ETS's infringing products or any other products confusingly similar to the S'well Bottle, and to provide documentation of the manner through

which ETS's infringing products were paid, including any bank accounts to, through, or from which funds were wired;

4.      ETS be ordered, pursuant to 15 U.S.C. § 1116, to file with the Court and serve on S'well a report in writing under oath setting forth in detail the manner and form in which ETS has complied with the injunction relief described above;

5.      ETS be ordered to account to S'well for ETS's profits and any damages sustained by S'well from ETS's acts of trade dress infringement, false designation of origin, false advertising and unfair competition, and that S'well be awarded the greater of (i) three times ETS's profits, or (ii) three times any damages sustained by S'well, under 15 U.S.C. § 1117, plus prejudgment interest;

6.      S'well be awarded compensatory and punitive damages, on account of ETS' gross, wanton, willful, and malicious conduct, pursuant to New York State statutory and common law;

7.      S'well be permitted to recover its costs and disbursements incurred in this action, including its reasonable attorney's fees; and

8.      S'well be awarded such other and additional relief as this Court may deem just, proper and equitable.

## <u>DEMAND FOR JURY TRIAL</u>

S'well respectfully requests a trial by jury on all claims.

Respectfully submitted,

Dated:   New York, New York          LEVINE SULLIVAN KOCH & SCHULZ, LLP
         May 10, 2017

                                     By: _____
                                          Robert Penchina

                                     321 West 44th Street, Suite 1000
                                     New York, NY 10036
                                     (212) 850-6100
                                     (212) 850-6299 (Fax)

                                     *Attorneys for Can't Live Without It, LLC  dba
                                     S'well Bottle*